UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
BRYSON CITY DIVISION
2:14-cv-30-RJC

| | | |
|---|---|---|
| RAYMOND FLOYD, Jr., | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | |
| | ) | **ORDER** |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| **Acting Commissioner of Social Security** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

**THIS MATTER** comes before the Court on Plaintiff's Motion for Summary Judgment,

(Doc. No. 9), and Memorandum in Support, (Doc. No. 10); Defendant's Motion for Judgment on

the Pleadings, (Doc. No. 11), and Memorandum in Support, (Doc. No. 12); Plaintiff's Response

in Opposition to the Motion, (Doc. No. 13); and the parties' Joint Status Report, (Doc. No. 15).

This matter is ripe for review.

**I.      BACKGROUND**

     **A.      <u>Procedural Background</u>**

Plaintiff Raymond Floyd, Jr. ("Plaintiff") seeks judicial review of the Commissioner's

denial of his social security claim. (Doc. No. 1). On May 18, 2010, Plaintiff filed a Title XVI

application for Supplemental Security Income. This claim was denied on May 25, 2010 because

the claimant did not meet the financial criteria to be eligible for benefits under this title. (Tr. 21).

This claim did not come before the administrative law judge ("ALJ"). On May 18, 2010, Plaintiff

filed a Title II application for a period of disability and disability insurance benefits ("DIB"). (Tr.

21).  In his application, Plaintiff claimed that he became disabled on April 28, 2010.  (Tr. 164).

Plaintiff's application was denied initially and upon reconsideration. (Tr. 134, 143). At Plaintiff's request an ALJ held a video hearing on August 21, 2012, at which Plaintiff appeared with his then-attorney. (Tr. 74). Plaintiff, represented by counsel, testified at the hearing, as did a vocational expert ("VE"). (Tr. 74). On January 24, 2013, the ALJ rendered a decision that Plaintiff was not disabled within the meaning of the Act since April 28, 2010. (Tr. 39). The Appeals Council denied Plaintiff's request for review on May 23, 2014, rendering the ALJ's decision the Commissioner's final decision on the case. (Tr. 1). Plaintiff then filed this civil action, seeking judicial review of the Commissioner's final decision.

B.    Factual Background

The question before the ALJ was whether Plaintiff was disabled under Sections 216(i) and 223(d) of the Social Security Act. (Tr. 21). After reviewing all the evidence, the ALJ concluded that Plaintiff "has not been under a disability within the meaning of the Social Security Act from April 28, 2010, through the date of this decision." (Id.)

To determine whether a claimant is disabled, the SSA established a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a). The five steps are:

(1) whether claimant is engaged in substantial gainful activity—if yes, not disabled;

(2) whether claimant has a severe medically determinable physical or mental impairment, or combination of impairments that meet the duration requirement in § 404.1509—if no, not disabled;

(3) whether claimant has an impairment or combination of impairments that meets or medically equals one of the listings in appendix 1 and meets the duration requirement—if yes, disabled;

(4) whether claimant has the residual functional capacity ("RFC") to perform his or her

past relevant work—if yes, not disabled; and

(5) whether considering claimant's RFC, age, education, and work experience he or she can make an adjustment to other work—if yes, not disabled.

See 20 C.F.R. § 404.1520(a)(4)(i-v).

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity at any time after his alleged onset date of disability of April 28, 2010. (Tr. 23). At step two, the ALJ found that Plaintiff had the following severe impairments: diabetes mellitus with diabetic retinopathy and neuropathy. (Tr. 23). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 26). Next, the ALJ determined that Plaintiff had the residual functional capacity (RFC) to perform medium work, as defined in 20 C.F.R. § 404.1567(c), except that in an eight hour day he can occasionally lift a maximum of 40 pounds. The ALJ also determined: he could never climb ropes, ladders, or scaffolds; he must avoid all exposure to hazards; and he could do no work requiring reading, writing reports, driving, peripheral vision, or attention to detail. (Tr. 27).

At step four, the ALJ found that Plaintiff could not perform his past relevant work. (Tr. 27). At step five, however, based on the VE's testimony given in response to a hypothetical question that incorporated Plaintiff's RFC, the ALJ found that Plaintiff could perform work that existed in significant numbers in the national economy. (Tr. 38-39). Accordingly, the ALJ appropriately concluded that Plaintiff was not disabled under the Social Security Act. (Tr. 39).

## II.     STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the

Commissioner's decision, <u>Richardson v. Perales</u>, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards, <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990); <u>see also</u> <u>Hunter v. Sullivan</u>, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The District Court does not review a final decision of the Commissioner de novo. <u>Smith v. Schweiker</u>, 795 F.2d 343, 345 (4th Cir. 1986); <u>King v. Califano</u>, 599 F.2d 597, 599 (4th Cir. 1979); <u>Blalock v. Richardson</u>, 483 F.2d 773, 775 (4th Cir. 1972). As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In <u>Smith v. Heckler</u>, the Fourth Circuit noted that "substantial evidence" has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting <u>Perales</u>, 402 U.S. at 401); <u>see also</u> <u>Seacrist v. Weinberger</u>, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence . . . .").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. <u>Hays v. Sullivan</u>, 907 F.2d at 1456; <u>see also</u> <u>Smith v. Schweiker</u>, 795 F.2d at 345; <u>Blalock</u>, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome—so long as there is "substantial evidence" in the record to support the final decision below. <u>Lester v. Schweiker</u>, 683 F.2d 838, 841 (4th Cir. 1982).

## III.    DISCUSSION

On appeal to this Court, Plaintiff argues that the ALJ erred as a matter of law in denying his claims on three grounds: (1) the ALJ erred in evaluating the medical opinion regarding Plaintiff's significant peripheral vision loss; (2) the ALJ erred in evaluating the Plaintiff's testimony regarding his own peripheral vision loss; and (3) the ALJ erred by violating SSR 00-4p. This Court also requested supplemental briefing regarding the Fourth Circuit's holdings in Mascio v. Colvin. 780 F.3d 632 (2015). The parties then filed a Joint Status Report in which both parties agreed that the Mascio holdings are not implicated in this case.

Mascio v. Colvin requires remand whenever: (1) the ALJ fails to conduct a function-by-function analysis in assessing the claimant's RFC; (2) the ALJ fails to explain the reason for excluding any limitation for concentration, persistence, or pace in the hypothetical to the vocational expert; or (3) the ALJ determines the claimant's RFC before assessing her credibility. Id. This Court finds that Mascio does not apply in this case.

> A.    Whether the ALJ erred in evaluating the medical opinion evidence regarding Plaintiff's peripheral vision loss.

The ALJ may give controlling weight to a medical opinion[1] from a treating source[2] and must adopt that opinion when it is "well-supported" by "medically acceptable" clinical and laboratory diagnostic techniques. 20 C.F.R. § 404.1527; 20 C.F.R. § 416.927(d)(2); SSR 96-2p, 1996 WL 374188 (July 2, 1996). Even if well-supported by medically acceptable clinical and laboratory diagnostic techniques, the treating source's medical opinion also must not be

---

[1] Under 20 C.F.R. 404.1527(a) and 416.927(a), "medical opinions" are opinions about the nature and severity of an individual's impairment(s) and are the only opinions that may be entitled to controlling weight.

[2] Under 20 C.F.R. 404.1502 and 416.902, a "treating source" is one's own physician, psychologist, or other acceptable medical source who provides one, or has provided one, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you.

"inconsistent" with the other "substantial evidence" in the individual's case record. 20 C.F.R. § 404.1527; 20 C.F.R. § 416.927(d)(2); SSR 96-2p, 1996 WL 374188. "If an opinion is not entitled to controlling weight, the ALJ must apply the following factors in determining the weight to be afforded the opinion: (1) the examining relationship; (2) the length, nature, and extent of the treatment relationship; (3) the extent to which the evidence supports the opinion; (4) the opinion's consistence with the record as a whole; (5) the specialty of the medical source; and, (6) other relevant factors." Smith v. Astrue, 2011 WL 5326844, at *8 (W.D.N.C. Nov. 4, 2011) (citing 20 C.F.R. § 404.1527(d)(1)-(6)). In sum, the opinion of a claimant's treating physician must be accorded "great weight" and may be disregarded only if there is persuasive contradictory evidence. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987); see also Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996) (stating, "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight.").

Plaintiff argues that the ALJ erred by rejecting Dr. Park's medical opinion. Plaintiff asserts that Dr. Park's opinion is consistent with both the objective evidence on the record and the Plaintiff's subjective complaints. Plaintiff states that the ALJ gave Dr. Park's medical opinion little weight because Mr. Floyd's visual acuity was largely intact. (Doc. No. 10 at 5) (citing Tr. 36). Plaintiff contends that this was improper reasoning, and it is actually Plaintiff's significant visual field restriction that renders him disabled. (Tr. 407; 492-94). Also, Plaintiff states that the ALJ rejected Dr. Park's medical opinion because Dr. Park's statement that Plaintiff could read was inconsistent with Dr. Park's statement that Plaintiff would have trouble reading. (Doc. No. 10 at 6). Plaintiff asserts that this reasoning is taken out of context, and that Plaintiff can read, just not well because of his narrowed field of vision. (Id.). Plaintiff argues

that the case should be remanded for proper consideration of Dr. Park's opinion.

This Court disagrees with Plaintiff. First, Dr. Park's opinion dated February 10, 2011 is negated by his own subsequent February 21, 2011 surgical results that resulted in a corrected visual acuity. Thus, his February 10, 2011 opinion regarding claimant's significant visual impairments is inconsistent with other evidence in the case record. Additionally, Dr. Park's opinion is internally inconsistent. Dr. Park listed numerous visual restrictions related to claimant's inability to read; however, Dr. Park also stated that claimant is "able to read or carry out tasks requiring careful attention to detail." (Tr. 492). Dr. Park's listing of numerous visual restrictions is also inconsistent with other evidence on the record. Specifically, Dr. Smith's records show that the claimant's motor and sensory functions, reflexes, gait and coordination were all intact. (Tr. 462). For these reasons, the ALJ had substantial evidence supporting his decision to not assign Dr. Park's opinion controlling weight.

Also, the ALJ properly considered the factors listed in 20 C.F.R. § 404.1527(d)(1)-(6) in giving Dr. Park's opinion little weight. Dr. Park stated that the claimant was unable to "work with speed and accuracy in general," indicating that Dr. Park was under the impression that the claimant has significant neuropathic limitations; however, there are no supporting tests or clinical observations of neuropathy. This indicates that Dr. Park was not familiar with claimant's medical record as a whole and that the relationship between Dr. Park and claimant was limited. Also, as previously mentioned, Dr. Park's inconsistencies with other evidence on the record is another factor the ALJ properly considered in assigning Dr. Park's opinion little weight. For these reasons, the Court finds that there is substantial evidence to support the ALJ's conclusion.

B.     Whether the ALJ erred in evaluating the Plaintiff's testimony regarding his own peripheral vision loss.

In assessing the claimant's credibility, the ALJ must consider all the available evidence,

including the statements about the claimant's pain, his medical history, medical signs and laboratory findings, and any objective medical evidence of pain. See SSR 96-7p, 1996 WL 374186 (July 2, 1996). Additionally, the ALJ must also consider any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it. See 20 C.F.R. 416.929(c)(3); 20 C.F.R. 404.1529(c)(3). "One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record." SSR 96-7p, 1996 WL 374186, at *5; see, e.g., Kearse v. Massanari, 73 Fed. Appx. 601, 603 (4th Cir. 2003) (finding that claimant's statements about his impairments were not credible because the objective medical evidence on the record did not support the statements).

Plaintiff argues that the ALJ should not have rejected his "credible statements," specifically the statements regarding his visual field restriction. Plaintiff asserts that the ALJ did not find his statements credible regarding his limited peripheral vision because there was no evidence supporting it in the record and because he could wash dishes, fold clothes, sweep, mop and vacuum. (Doc. No. 10 at 6). First, Plaintiff argues that this is in fact supported by treatment notes. (Id.). Second, Plaintiff argues that although he is able to perform some cleaning chores, he is not able to perform them with accuracy and speed, thus his statements regarding his visual field restriction are consistent with evidence on the record. (Id.). Therefore, Plaintiff contends that the case should be remanded for proper consideration of his credible statements.

This Court disagrees with the Plaintiff. First, the Plaintiff, in his Disability Report-Adult on May 18, 2010, alleged that he was legally blind in his right eye and had problems with his left eye. (Tr. 200). According to his own testimony, however, Plaintiff does not meet the statutory criteria for legal blindness. For example, Plaintiff testified that vision in his left eye is 20/20 and

he does not wear glasses for vision. Also, medical records from June 20, 2012 show that Plaintiff's uncorrected vision was 20/60 in the right eye and 20/20 in the left eye. (Tr. 475). The medical record also reveals that Plaintiff does not meet the statutory definition of "legally blind," thus the medical record is also inconsistent with Plaintiff's assertion about his eye problems. (See Id.). Additionally, the Plaintiff's statements regarding the severity of his visual impairment are inconsistent with daily activities the claimant performs. In particular, Plaintiff testified that he could do many activities of daily living, including driving. (Tr. 31). If Plaintiff's visual impairments were as severe as he asserts, he would not be able to drive, and in fact, would be prohibited by the state from driving. It is also noteworthy that while Plaintiff testified that he does not wear glasses for vision, he told the Social Security Administration that he did wear glasses. (Tr. 209). Because of these several inconsistencies, this Court finds that there is substantial evidence in the record supporting the ALJ's credibility determination.

C.      Whether the ALJ erred by violating SSR 00-4p.

SSR 00-4p states that "[o]ccupational evidence provided by a VE . . . generally should be consistent with the occupational information supplied by the [Dictionary of Occupational Titles (DOT)]. When there is an apparent unresolved conflict between VE . . . evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled." 2000 WL 1898704, at *2 (Dec. 4, 2000).

Plaintiff argues that the ALJ erred because there is an unresolved conflict between Plaintiff's RFC and the VE's testimony regarding jobs Plaintiff could perform. Specifically, in determining Plaintiff's RFC, the ALJ found that he can perform no work requiring reading or writing because of his visual restrictions. (Tr. 27). The VE then testified that Plaintiff could

perform three jobs with an RFC for no reading or writing. (Tr. 103-04). The three jobs the VE mentioned are cleaner, dishwasher, and garment sorter. The DOT states that these jobs all have a language level of at least "1." See U.S. Dep't of Labor, Dictionary of Occupational Titles § 222.687-010, 1991 WL 672130; § 318.687-014, 1991 WL 672756; § 381.687-018, 1991 WL 673258, (4th ed. 1991). A language level of "1" means that the individual must be able to read 2,500 words at a rate of 95-120 words per minute. The individual must also be able to write simple sentences containing subject, verb and object and series of numbers, names and addresses. U.S. Dep't of Labor, Dictionary of Occupational Titles, Appendix C, 1991 WL 645958 (4th ed. 1991). Therefore, Plaintiff argues that because the ALJ found that he can perform no reading or writing due to his visual restrictions, the VE's testimony that he could perform the cited jobs is inconsistent with the DOT's reading and writing requirements for these jobs. (Doc. No. 10 at 7). Therefore, Plaintiff asserts that the case should be remanded to resolve this inconsistency.

This court disagrees with Plaintiff's contention that this inconsistency is one which requires remand. First, there is no requirement that the VE's testimony be absolutely consistent with the DOT. Instead, the VE's testimony only need be "generally" consistent with the DOT. SSR 00-4p, 2000 WL 1898704, at *2. Here, the VE's testimony is generally consistent with the DOT because both the VE's testimony and the DOT discuss how no or minimal language level is required to complete the aforementioned jobs; thus, SSR 00-4p is not violated based on this minor discrepancy alone. Additionally, there is a requirement that the ALJ inquire at the hearing whether such a conflict exists. SSR 00-4p, 2000 WL 1898704, at *2. Here, the ALJ asked the VE whether the VE's testimony was consistent with the DOT, and the VE testified that it was

consistent. (Tr. 104).

Finally, the ALJ must only elicit an explanation of a conflict where the conflict is apparent. This conflict was not apparent. First, the VE testified that there was no conflict. <u>See</u> <u>Mosteller v. Astrue</u>, No. 5:08-cv-3-RLV-DCK, 2010 WL 5317335, at *4 (W.D.N.C. July 26, 2010) (finding that "there was no apparent unresolved conflict since the VE testified on the record that his opinions were consistent with the DOT"). Additionally, "[t]he DOT lists maximum requirement of occupations as general performed, not the range of requirements of a particular job as it is performed in specific settings." <u>Id.</u> at *3. Thus, a language level of one is the lowest language level in the DOT and is the appropriate language level for an individual who is limited to no reading. At the hearing neither Plaintiff nor his attorney objected to or otherwise argued that Plaintiff could not perform the cited jobs that required reading. <u>See</u> (Tr. 104-06). Under SSR 00-4p, a conflict that is not identified by counsel at the ALJ hearing is not an apparent conflict. <u>See</u> <u>Carey v. Apfel</u>, 230 F.3d 131, 146-147 (5th Cir. 2000) (stating that "claimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing"). For these reasons, there was no apparent conflict to resolve, thus the ALJ's decision does not violate SSR 00-4p.

## IV.  CONCLUSION

In light of the deferential standard of review applied under the Social Security Act, 42 U.S.C. §§ 405(g), 1383(c)(3), the Court finds that there is substantial evidence to support the Commissioner's final decision.

**IT IS, THEREFORE, ORDERED** that:

1.     Plaintiff's Motion for Judgment on the Pleadings, (Doc. No. 9) is **DENIED**, and

2.     Defendant's Motion for Summary Judgment, (Doc. No. 11), is **GRANTED**;

3.     The Clerk of Court is directed to close this case.

Signed: August 18, 2015

Robert J. Conrad, Jr.
United States District Judge